Today we're going to talk about the Fourth Amendment and specifically the word in the Fourth Amendment that is houses. The Fourth Amendment protects people from unreasonable searches and seizures in their houses. That means that police, generally speaking, cannot go into a house without a warrant, cannot arrest someone in their house without a warrant. In this case, the Fourth Amendment protects people from unreasonable searches and seizures in their houses. In this case, the police had no intention to seek a warrant. That's the testimony of Officer Lopez. So there are a few exceptions to this. Well, they decided that they didn't have time to do it. There was an emergency. So why not get to that issue? Were they justified in considering this the type of emergency that allows them to make a sweep for protection of people? Right. So there's the emergency exception, which is to help people inside the home. And here we didn't have any... Well, and people outside the home, too. There was people beginning to gather. There was the young boy. There was the older woman. And there was the police officers. If somebody has a gun, it could be troublesome. Now, focus just at that moment when they made the decision to go. Tell me why they didn't have sufficient evidence to make a protective sweep. Okay. So the reason they did not have sufficient evidence for a protective sweep is they did not arrest the suspect in the house or anywhere near the house, not even in the curtilage of the house. So that's the first issue. They actually apprehended the suspect in a neighbor's yard. So by the time they entered the home, they had already apprehended the suspect. By the suspect, you mean the person that ran through the house and went out the window? Correct, Your Honor. Now, you say they've apprehended. How did they get that information? Was it when the police officer brought the suspect around, or did they telephone each other? So the officer that went around behind the house to see if the man who ran in the house exited radioed the officer that was in front of the house with his gun waiting in front of the house and said, I have him. He's in a neighbor's yard. That's what the officer testified to. Okay. Now, they had reasonable suspicion that he had a gun because of his furry gesture before he started running. I actually... Was there anything said about a gun in the statement from the police officer in the back of the house to the police officer in the front of the house? So no one ever saw a gun. What they saw... Well, they saw what they thought was a gun. Well, no, they actually didn't even see that. What they saw was he was holding his waistband, which could mean that he had a gun. It could also mean he was holding something, including holding up his pants as he was running. I mean, there's all kinds of reasons why he could be holding his waistband. You know, unlike the cases where they've actually seen someone with a gun or saw a gun in the person's possession, which might give them a reasonable suspicion, which is obviously different than probable cause, but a reasonable suspicion. There wasn't that here. There was a speculation. Speculation's not sufficient. When you say speculation's not sufficient, have we ever held that you have to see the gun? Well, you have to have specific articulable facts upon which you can draw a reasonable inference. We've never held that you have to see the gun. I'm not aware of any cases that say you have to see the gun, but I am aware of cases where you actually have to have some fact. You can't speculate. There are cases that say you cannot speculate. Let's just assume for the sake of argument that for their own protection they were at least curious and worried that they may have a gun because of what happened. Now, at the time that the police officer out back radioed to the police officer in front, was there any mention of gun one way or the other? No. Was the person who went out the back window, was he still in the back when the police officers made the entry into the house, or was he in the front of the house with the police officers? I think that's unclear from the record. I think Officer Lopez was unclear at the time that they entered the house whether Officer Rosales had returned with Nevarez, who was the suspect, not my client, not the defendant in this case. So I think the record's a little unclear about that. By the way, I forgot to reserve two minutes of time, and I just want to make sure that I do that now. Yeah, I feel constrained. Go ahead. Yeah, so, I mean, I think I've answered your question. I think the record is unclear exactly where Rosales was. You know, what Officer Lopez knew is unclear about that. All he knows is Officer Rosales had apprehended the suspect in the backyard, so he was caught by the time they decided to enter the home. Yeah, okay. Well, it was still left open if he had a gun, whether he still had a gun when he went out the back. That information apparently wasn't in the police officer's mind. No, it was not in his mind. So he could have thought it's either with the defendant or he left it in the house and the gun may still be in the house. But, again, Your Honor, there's all these cases that say you can't speculate about what might happen or what may happen. You actually have to have facts. I understand. And we've got speculation. Your argument is built on the idea that they couldn't consider there may be a gun by what they saw. But if you get over that, there still is a question. Just assuming that that's the fact, I'm still curious whether or not they have sufficient to go in and make this protective sweep. What's your argument on that? Assuming that they think there may be a gun in the house, would they be able to make the sweep? I don't think so because there's the case, and I'm thinking it's Hoyos, but I'd have to look at my notes, where they actually saw an individual on his porch and they saw an actual gun and he went inside his house and then the officers went into the house after him because they suspected he was committing a misdemeanor, a crime of having a gun. And that was held to be not sufficient. So remember, when you're relying on exigency, you also have to have probable cause, and that's the thing that I think is really missing here. The officers didn't even know that my client was in the house. They had no way to know that anyone was in the house. So they didn't have any probable cause to believe a crime was committed or being committed or going to be committed. So without that probable cause, even if there was exigency, which I also dispute on these facts, they didn't have any right to go in for a protective sweep. Let me ask you a different question or go at this a little bit differently. Wasn't your client on supervised release at the time? He was, but the officers were not aware of it. Just a minute. He's on supervised release. As a part of his supervised release, as I understand it, he's required to submit his person, his residence, his office, his vehicle, or any of his property under his control to a search by a law enforcement officer at any time with or without cause. How does that factor into this? Well, it factors into it because, remember, you have to look at what the officers knew before they went in the house, and they did not. What? So why do I have to look at what they knew before they went in the house? If he is under probation and he is under the requirement that he's required to submit himself to this search by any law enforcement officer at any time with or without cause, what difference does it make to what they know or didn't know? And what case tells me that? Well, I think that the, well, it depends. Because the bottom line that nobody's really argued, so I really wanted your input here. Nobody's really in my book even looked at this argument, but I said to myself, if this guy's on probation and he had to be searched any time that anybody wanted to, any time with or without cause in his residence or his person, why is there an argument here? No harm, no foul. Well, I think there are cases on this, and I'd be happy to submit a supplemental brief. Oh, I guess I was trying to find the cases. Yeah, I mean, I think there are cases that say that it depends on what the officers knew. It shouldn't depend on what they knew. If he knows at any time with or without cause, they can do whatever they want to do. Because it's from the officer's perspective, the facts that they knew at the time. It's not based on the defendant's status. I see. Well, that's interesting. I was interested. Nobody even talked about that, briefing and otherwise. Do I need to send it back to let somebody think about that in the district court? You could do that, Your Honor, and that would be just fine with me. We'd be happy to brief that to the district court and see what they say. But it seems to me that I remember from other cases that I've handled that I've seen cases that say that that is not a factor unless the officers know that the person is on probation with conditions or supervised release. Okay. And then, as I understand it, then . . . I'm almost out of time, so I'm just letting you know. I understand you're out of time, but I'm asking a question. Okay. This is a fleeing suspect who is perhaps armed. He runs into this apartment and he exits through the bathroom window, correct? Correct. A visibly shaken but unharmed woman executes the apartment a few minutes later? Yes. She didn't say anything to the officers, but the apartment is in a high crime area, right? Right. And what you're arguing is that is insufficient to reasonably conclude that somebody in the apartment could have been injured or in need of help? Yes, Your Honor. That's what we're really looking at. Yes, and that is insufficient. She didn't come out screaming. She didn't come out yelling. She was completely unharmed. The officers did not ask her consent to go in the home. They apparently did not ask her or couldn't remember if they asked her whether someone was in the home. I think that was actually what the officer testified, that he could not recall whether he asked her. And so without any facts, I mean, she was outside the home. She wasn't in the home. If she was in the home at the window looking afraid and freaked out and scared and yelling or hysterical, then of course they can go in and make sure she's okay, but she was outside. But I guess the question is, would it be unreasonable to assume that the officer could not think that someone may be harmed in the unit? Again, may is not sufficient. There needs to be specific articulable facts upon which you can rationally infer that there is an emergency going on. And if you look at the cases, which we did in the briefing, I think pretty thoroughly, all of the cases where they allowed that kind of entry under either exigency or emergency, the officers had facts that they knew that allowed them to make those inferences. They didn't have them here. Do you have questions? I'll reserve the rest of my time. Well, you don't have any reserve, but I took you over, so I'll give you some time. Okay, thank you, Ron. I'll try to be fair here. Not allowed in Idaho, but I'll try it. I'm in California. May it please the Court, Susan Gray, on behalf of the United States. Do you want to pull that microphone over in front of you? Thank you. I confess, Your Honor, I sometimes have trouble hearing in this courtroom. Amen. Is that okay now, Your Honor? Very fair. Thanks. Susan Gray, on behalf of the United States, may it please the Court. The district court properly found that the officer's brief sweep of the apartment was objectively reasonable under the Fourth Amendment's emergency exception and for their own safety, and that Mr. Garcia's arrest occurred outside the building following the legal probation search that uncovered the distribution amounts of controlled substance. Now, all three of those issues are really facts that are presented in this case, the emergency exception, the protective sweep, and the arrest, are all very facts-intensive inquiries. And in this case, the district court did everything that the court could ask of her. She had an extensive evidentiary hearing where she recognized that in each of these, the question of whether or not, for example, there was an emergency there, turns on the totality of the circumstances. And there's no bright-line rules. Well, I understand there's no bright-line rule, but I tried to put it very carefully to your opponent because those are the facts I have. One, there's a fleeing suspect who is perhaps armed who runs through an apartment and out a bathroom window. Two, there's a visibly shaken woman who exits the apartment a few minutes later, but she doesn't say anything to the officers. Then, third, the apartment's in a high-crime area. My idea is, can I find anything in that which says the officers have an objectively reasonable basis based on specific and articulable facts that the apartment harbored an individual posing a danger to others or the officers? Well, Your Honor, I don't think it's the record and the district court's factual findings are limited to just those three or four factors. What else? Well, actually, Your Honor, going through the court's order after this evidentiary hearing where she credited the officers' testimony, I counted nine. And with the court's permission, I think we should go through them. Okay. First, they have a fleeing suspect who, that when they approach him, he takes off running. Well, I said that. Then they believed him to be armed. And she made a specific finding, and this is E.R. 23, that based on his body language, they believed him to be armed, not just suspected. Perhaps armed. Okay. He'd entered a unit that they didn't know to be his. And this is unlike the Nora case. They didn't know at the time that the entry that he'd run into his home. And they had no reason at that point to believe it was empty. They'd not been informed that anyone was inside, no one was inside. And there was nothing to indicate that. They'd seen a boy come out. They'd seen the woman come out, frightened, shaking. And more specifically, Officer Lopez said as if something horrible had happened to her. They also, the district court also credited Officer Lopez's testimony that even if he'd asked her questions about what had happened or if there were other people in there, that based on his experience in that neighborhood, she might not have told him, because people routinely don't want to tell anyone how many people they have illegally staying in the apartment. And the district court specifically found that imposing that additional type of verification is particularly reasonable, unreasonable here, where any kind of those kinds of questions and inquiry wouldn't have led to a reliable result. And the other thing that I think is very important is the Court found there was such a short period of time between the Neverez running by, the woman running, coming out within minutes of Neverez running out by, and the officers going in. She found — she also credited their experience, though, Your Honor. And as you pointed out, this is a high-crime area. The officers have been patrolling this area for officer safety for three years. And they know that people who flee through apartments can sometimes injure those individuals in the apartment. And there was no more than that that was required for them to go into their community caretaking function to make sure someone hadn't been injured. Well, when I looked at this, I mean, you look at United States v. Granville. That's our case in 2000. It suggests that we should not base this case on general propositions. It has to be specific to our case. And there are general propositions that sometimes fleeing suspects can hurt people. But on this particular case, I'm trying to figure out what the facts specific to this would be that would make it such that they would automatically be able to suggest that this would require such a search. Well, Your Honor, I think the court needs to keep in mind that in all of these situations, the officers being asked to make a split-second decision based on what they know on the scene. This is not a situation where officers are responding to a 9-11 call or a neighbor calling in a complaint. They're watching this happen in real time. And I think one of the crucial facts is that this woman comes out of the apartment. She's shaking. She's scared. And the officer says it looked as if something horrible had happened. At that point, don't the officers in their community caretaking function, they would be remiss had they not gone in to see if someone was injured. Give me the timeline as to when the arrest occurred. The arrest... Because it seems to me that they, if not went in after the arrest occurred, certainly seemed to go in after the arrest occurred. They did go in after the... And so, therefore, the one who's supposed to have caused all the problem has already been arrested, and they have only three facts in the first place. No, Your Honor. I disagree. And let me tell you why. His arrest didn't change the equation. They still had the facts that he ran in. They don't know that it's his apartment. A woman comes out, frightened, shaking, something terrible has happened, looking that way. They don't know who's in the apartment, but they don't know that no one is in the apartment, and they don't know if someone is hurt. But more importantly, they've seen a man run through this apartment. He's come out the back window. When they arrest him, there is nothing, no evidence in the record that they found a gun on him. So they believe that that... They have reason to believe that at that point that gun is still in there. They're standing out here and concerned throughout this incident that someone in that apartment, be it a gang member, someone else in the house, could take a potshot at the bystanders, could take a potshot at them, or that somebody could be in there injured. And so his arrest doesn't change the equation. The need to go in there and make sure, specifically because the record is, does not say, that it's not clear that the record, there's nothing in the record indicating the gun was found. Therefore, there is, it was reasonable for the officers to believe that that gun was still in there, and that someone could be in that apartment being held against their will, having been injured based upon their experience when he ran through. So I think you can imagine the uproar if they had not. How did the police officers testify in relationship to the gun? Pardon me, Your Honor? You point out, and I think it's a good point, that they thought the guy had a gun. He went out the other side. There's no gun. If so facto, gun still inside the house. Did the police officers articulate that as a reason? Your Honor, I think it was generally understood that at that point they, because the officer, the. The answer then is no. Your Honor, I think there is something that corroborates. I'm just trying to let you answer the question, because that was going to be my next question. I didn't find anything in the police officers' statements, any place that said they were looking for the gun. Well, Your Honor, they couldn't go in, and they could do a protective sweep, and they could do an emergency. I know what they can do, but I'm trying to figure out. Here we have three facts. I tried to boil it down on what they knew so that I could get some objective reason to go running in there on an emergency basis. I got the law saying this should be a narrow exception. Shouldn't be wide to let the police do anything they want to do. And then at that point, they've got him arrested. So I'm saying to myself, why would I do this? Well, Your Honor, if I may, and I know I'm short of time, I think with the officer's behavior after the arrest, as he stands there with his gun still pointed at the area and continues to shoot people away. One of the things he reiterates over and over again, I was concerned for the bystander safeties. I kept trying to move them out of the way. All of the people that came out of the union. That certainly indicates, and the district court found, that this corroborated his concern that there was a danger in that apartment. So I'll give you one last chance, and then I want my colleagues to have a fine opportunity to give you more. What is this supervised release? It wasn't argued any place. Is it because it's a dead point, Judge? Forget it. Don't worry about it. I don't want you to base it on this. I mean, I kept saying to myself, why is that not even argued? Your Honor. Having been a district judge and given that probation instruction to all my people who were on probation and expecting them to do what they had to do to honor, I couldn't understand why they didn't even factor in here. Well, Your Honor, that is the basis for their ability. It's the basis for the last, having to do with whether there's an arrest. But it has nothing to do, in my view, of the arguments having to do with the motion to suppress. The Court is correct that given that his supervised release, suspicionless search condition, he had a diminished expectation of privacy. But they had to get in the door to find that he was there. And once they found his identity, immediately they acted on the suspicionless search. That was the issue. With that, with the Court's mission, I would ask that. I just have one question. In terms of the theory that there might be a gun, everything is speculative right up until the time when they don't find a gun. What is it that made them think that there was a gun in the house that required them to go into the house without a warrant? One is the suspect's flight, headlong flight into the apartment that they didn't notice him. Secondly, he's holding his waistband, which Officer Lopez testified that he knew in his experience that's where individuals in that neighborhood would often hold their weapon. And then when the older woman came out, shaking, scared, and I think this is a crucial fact. The officer who witnessed her, who was on the scene, saw her come out as if something horrible had happened. That's how he described it to the district court. Or that's how he made it seem when he needed to build up what he had to justify going into the house? Well, Your Honor, the district court made credibility findings throughout her order, and she accepted his testimony. And there was a period during the evidentiary hearing, I believe it's at 236 through 238, where defense counsel attempted to suggest that this was some sort of pretextual entry to look for drugs or to make an arrest. And the district court challenged him, and I believe that's on 236 or 238, to say where's the evidence you have to support that? And he didn't have any. And she said, I deal with evidence, and the evidence here is that the officers here were dealing with a situation, very fast-moving, very tense, trying to make a decision whether they should go in. And at that point, they had the facts we've just been discussing, but they also knew a gun had not been found. But I'm also asking in terms of the concern for safety. The young man was, a child was coming out, and an officer stopped him and asked him, who was that? And he identified, he repeated again, who was that? He identified him. The child, I think, demeanor was not indicated as being scared or trying to get out in a hurry. And so it seems to me that the child versus the woman who may or may not have been nervous and worried and thinking someone is hurt, you're saying that because of the reputation of the police, if she thought somebody in there was hurt, she wouldn't have told him or needed help? No, Your Honor. I think that at that particular point, he said that if I asked her how many people were in the unit, she might not tell me because of my experience. But I think, again, to the extent the Court may be asking why wasn't he asking more questions, actually, if you look at ER 164 through 166, you'll see that the officer testifies, I was asking questions. I can't remember the specific ones. I was trying to figure out what was going on. So there wasn't just he didn't just stand silent. Meanwhile, and I think this is very important. Meanwhile, he's in the middle of a dangerous neighborhood where he knows that there's violence, there's gangs. He knows somebody has run into an apartment. He doesn't know that's his. And he thinks he may have a gun. So everything he's doing is aimed at trying to protect the residents of the area as well as himself. And at that point, he believes, and the district court found, and those factual findings are entitled to great deference, that he believed there was someone with a gun inside that house. Thank you. Thank you for your argument. We'll give you one minute, Counselor. Thank you, Your Honor. Okay. So I just want to respond with a few facts. First of all, when the suspect came running toward the second officer, the officer who was in front of the house, the officer did not unholster his gun. So by that time, it's very possible that the guy was no longer holding his waistband because it seems reasonable to me that if someone is running at you and you think they have a gun, you're going to pull out your gun to protect yourself and any other bystanders. So I don't think he probably had one. The other thing is, the woman came out of the house shaken and scared because an officer was pointing a gun at her as she came out of her house. I think each of us would be frightened and scared if that happened. And then the third thing is, Officer Rosales, when he apprehended Mr. Neverez, the fleeing suspect, I call him Ferris Bueller because he ran through the house, he didn't tell Officer Lopez anything about a gun. So there wasn't any information about a gun. And to address your question, Judge Wallace, as well as yours, Judge Batts, Officer Lopez never testified that they were going into the house to look for a gun. And with that, I'll submit. Thank you. Thank you, Your Honor. All right. This case 1710071 and 72 are then submitted.
judges: Wallace, N.R. Smith, Batts